IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

William Benner, Vote Bill Benner       :
Committee, Nichole Missino, and        : No:_____
d/b/a Giovanni's Media Barber,         :
Kraig Nace, Detailed Attention, Inc.,  :
John Williams, Stephen Cassel,         :
Iacobucci Formal Wear,                 :
                                       :
           Plaintiffs                  :
       v.                              : Complaint in Civil Action
                                       : Seeking Declaratory Judgment and
Thomas W. Wolf, in his official        : Injunctive Relief
Capacity as Governor of the            :
Commonwealth of Pennsylvania,          : JURY TRIAL DEMANDED
Rachel Levine, MD, in her official     :
capacity as Secretary,                 :
Pennsylvania Department of Health      :
Dennis M. David, Secretary,            :
Pennsylvania Department of             :
Community and Economic                 :
Development,                           :
                                       :
           Defendants                  :

## **Introduction**

## **Jurisdiction & Venue**

1.     This Court has original jurisdiction to hear this matter. This is a civil

action arising under the Constitution and laws of the United States of America. 28

U.S.C.S. § 1331. Further, this is an action to redress the deprivation, under color of

any state law, statute, ordinance, regulation, custom or usage, of any right,

privilege or immunity secured by the Constitution of the United States or by any

1

Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States. 28 U.S.C.S. § 1343 (a)(3). It is also an action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights. 28 U.S.C.S. § 1343 (a)(4).

2.     Venue is within this judicial district pursuant to 42 U.S.C.S. § 1391 (b)(1) and (2). At least one if not both of the Defendants reside within this judicial district. 42 U.S.C.S. § 1391 (b)(1). Further, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district as the Defendants and their agents have principal office locations at the State Capitol in Harrisburg, Pennsylvania and thus the executive orders and the wavier process that form the basis and subject of this action emanated from and were administered from there. 42 U.S.C.S. § 1391 (b)(2).

## **The Parties**

3.     William Benner is an adult individual residing at 1748 Erly Road, Newport, Perry County, PA 17074 and is the candidate for whom the Vote Bill Benner Committee, which is a Pennsylvania candidate committee, is organized, and which maintains a campaign office at 319 Walnut Street, Newport, Perry County, PA 17074. Plaintiff Benner pleads as himself and on behalf of the Vote Bill Benner Committee.

2

4.      Nichole Missino is an adult individual residing at 478 Granite Terrace Springfield, Delaware, PA 19064. Plaintiff Missino is also the owner and operator of Giovanni's Media Barber Shop with a principal place of business located at 18 S. Olive St, Media, Delaware County, PA 19063. She is a licensed barber. Plaintiff Missino pleads as herself and on behalf of Giovanni's Media Barber Shop.

5.      Kraig Nace is the owner and president of Detailed Attention, Inc., with a principal place of business located at 1 South Market St., Duncannon, Perry County, PA 17020. Plaintiff Nace pleads as himself and as president of Detailed Attention, Inc.

6.      John Williams is a licensed real estate agent and an Associate Broker/Broker with Springer Realty Group and with a principal place of business located at 2 Christy Dr., Suite 102, Chadds Ford, Delaware County, PA 19317.

7.      Stephen Cassel, is a partner of Iacobucci Formal Wear, which is a Pennsylvania partnership with a principal place of business at 107 West Eagle Road, Havertown, Delaware County, PA 19083. Stephen Cassel is also a licensed real estate agent with Long & Foster Real Estate with a principal place of business located at 1100 West Chester Pike, Havertown, Delaware County, Pennsylvania 19083.

8.     Defendant, The Honorable Thomas W. Wolf, is the Governor of the Commonwealth of Pennsylvania, with a principal office address at the Office of the Governor, 508 Main Capitol Building, Harrisburg, PA 17120.

9.     Defendant, Dr. Rachel Levin, is the Secretary of Health of the Commonwealth of Pennsylvania with a principal office address at Pennsylvania Department of Health, Health and Welfare Building, 8th Floor West, 625 Forster Street, Harrisburg, PA 17120.

10.    Defendant, Dennis M. David, the Secretary of the Pennsylvania Department of Community and Economic Development, with a principal office address at Commonwealth Keystone Building, 400 North Street, 4th Floor Harrisburg, PA 17120-0225.

## The Facts

11.    On March 6 2020, the Governor issued a Proclamation declaring a disaster emergency throughout the Commonwealth of Pennsylvania.[1]

12.    On March 13, 2020, Governor Wolf ordered the statewide closure of Pennsylvania's schools (hereinafter the "School Closure Order").[2]

---

[1] https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf

[2] https://www.governor.pa.gov/newsroom/governor-wolf-announces-closure-of-pennsylvania-schools/

4

13.    On March 19, 2020, the Governor issued an Executive Order barring any person or entity from operating a place of business in Pennsylvania that is not "life-sustaining," ordering that life-sustaining businesses may remain open, but must follow, at a minimum, the social distancing practices and other mitigation measures defined by the Centers for Disease Control (CDC) (the "Business Closure Order").

14.    The Business Closure Order contained a list classifying all industries as either life-sustaining or non-life-sustaining (the "List").

15.    Plaintiffs are businesses or entities included on the List as non-life-sustaining and thus were compelled to close their physical operations.

16.    The Business Closure Order stated that its violation could result in citations, fines, or license suspensions, forfeiture of the ability to receive any disaster relief; prosecutions by the Department of Health, including quarantine, isolation, or other disease control measures with violators subject to fines or imprisonment and any other criminal charges that might be applicable.

17.    After issuing the Business Closure Order, the Governor added a "waiver" process thru which businesses and entities could submit an application to the Pennsylvania Department of Community and Economic Development (DCED) and request that they be permitted to operate.

18.     DCED received 42,380 waiver requests. So far, DCED approved 7,837 requests for a waiver, rejected 18,746, found 14,471 did not require one for the activity they wanted to perform. According to DCED, the remainder are still being processed.[3]

19.     On Wednesday, April 1, 2020, DCED announced that it was ending the waiver process for new requests on April 3, 2020 at 5:00PM.[4]

20.     DCED employees reviewed the waiver applications and granted or denied them.

21.     The Governor provided no administrative review of the denial of a waiver application.

22.     The Governor maintains there is no right to judicial review of the denial of a waiver.

23.     In an April 13, 2020 opinion, the Pennsylvania Supreme Court held there is no right to judicial review of a waiver denial under the Pennsylvania Constitution.[5] (A true and correct copy of that Majority Opinion in the similar case,

---

[3] https://www.pennlive.com/news/2020/04/gov-tom-wolf-vetoes-bill-that-could-allow-more-pa-businesses-to-reopen.html

[4] https://www.pennlive.com/coronavirus/2020/04/pa-businesses-seeking-waiver-to-stay-open-through-coronavirus-closures-have-until-friday-to-apply.html

[5] The Opinion was split 4/3 on the issue of judicial review with the three Concurring and Dissenting Justices apparently believing there should be judicial review.

Friends of Danny DeVito et al. v. Governor Wolf, et al is incorporated herein by reference, attached and marked as Exhibit A).

24.     That opinion results in the denial of judicial review to at least 18,746, businesses whose waivers were denied.

25.     On April 1, 2020, the Governor ordered all individuals in Pennsylvania to stay-at-home (the "Stay-At-Home Order"), except as needed to access, support, or provide life-sustaining business, emergency, or government services.[6]  On that same day, Secretary Levine issued a similar order.[7] (The Business Closure Order and the two Stay-At-Home Orders are referred to collectively as the "Orders;" and the Governor's and Secretary's Stay-At-Home Orders are referred to as the same and in the singular).

26.     The Stay-At-Home Order prohibits gatherings outside the home, except as may be required to access, support, or provide life-sustaining services as outlined above.[8]

---

[6] https://www.governor.pa.gov/wp-content/uploads/2020/04/20200401-GOV-Statewide-Stay-at-Home-Order.pdf

[7] https://www.governor.pa.gov/newsroom/gov-wolf-sec-of-health-pennsylvania-on-statewide-stay-at-home-order-beginning-at-8-pm-tonight-most-prudent-option-to-stop-the-spread/

27.     Enforcement of the Stay-At-Home Order commenced immediately for all counties covered under the Governor's previous Order directing "Individuals to Stay at Home," first issued March 23, 2020, as amended, and commenced at 8:00 PM Wednesday, April 1, 2020, for all counties.

28.     On May 1, 2020, the Governor announced the "reopening" of twenty-four counties in the northwest and northcentral regions of the state, moving them from the "Red Zone," meaning non-life sustaining businesses remain closed, to the "Yellow Zone," meaning some restrictions on work and social interaction will cease, which began on 12:01 a.m., Friday, May 8, 2020 (hereinafter the "Announcement").[9] The Announcement references the Governor's full plan to reopen Pennsylvania (hereinafter the "Plan").[10]

29.     Under the "Red Zone," all non-life-sustaining businesses remain closed and "large gatherings" of groups is prohibited.[11]

30.     Neither the Announcement nor the Plan reopens the Plaintiffs; they are all still deemed to be non-life-sustaining and are located in the Red Zone.

---

[9] https://www.governor.pa.gov/newsroom/gov-wolf-announces-reopening-of-24-counties-beginning-may-8/

[10] https://www.governor.pa.gov/process-to-reopen-pennsylvania/

[11] The Plan does not define "large gatherings." However, the "Yellow Zone," which is a loosening of prohibitions in the Red Zone, prohibits, "Large Gatherings of More Than 25." So we can conclude that the large gatherings must mean gatherings of fewer than 25 people.

30.     Neither the Announcement nor the Plan provides a date when said Plaintiffs, or any business or entity on the non-life-sustaining List and located in Pennsylvania's remaining red counties will be permitted to reopen.

31.     On May 7, 2020, the Governor issued another executive order, commencing on May 11, 2020, staying foreclosures and eviction proceedings until July 10, 2020 (hereinafter the "Eviction/Foreclosure Stay Order").[12]

32.     On May 7, 2020, the Governor extended the Stay-At-Home Order for counties in the Red Zone to June 4, 2020.[13]

33.     On May 8, 2020, the Governor announced thirteen additional counties will move to the Yellow Zone at 12:01 a.m. on Friday, May 15. Those counties include Allegheny, Armstrong, Bedford, Blair, Butler, Cambria, Fayette, Fulton, Greene, Indiana, Somerset, Washington and Westmoreland.[14]

34.     None of the Plaintiffs' businesses are located in those counties identified *supra*.

35.     In his May 8, 2020 announcement, the Governor:

---

[12] https://www.governor.pa.gov/wp-content/uploads/2020/05/20200507-TWW-dispossession-of-property-order.pdf

[13] https://www.governor.pa.gov/newsroom/gov-wolf-sec-of-health-take-actions-on-stay-at-home-orders-issue-yellow-phase-orders/

[14] https://www.governor.pa.gov/newsroom/gov-wolf-announces-13-counties-will-move-to-yellow-phase-of-reopening-on-may-15/

     a.     threatened to "re-impose restrictions if danger arises;"[15]

     b.     repeated his threats to arrest and prosecute those who violate his Orders;

     c.     threatened Pennsylvanians with the loss of their professional or occupational or other state licenses if they violated the Order;

     d.     and then promoted the program that he set up so that one Pennsylvanian can inform the government if a business, entity or person is violating the Orders.

36.     Then, in response to the Governor's May 8, 2020 announcement extending the Orders, and the Red Zone, to much of the Commonwealth, elected officials from across Pennsylvania began denouncing the Orders, labeling them unconstitutional and declaring they will not enforce them.

37.     Several law enforcement officers including the county sheriffs of Perry and Cumberland Counties, and the District Attorneys in Armstrong, Beaver, Greene, Lancaster, Lebanon, Perry and York Counties, announced they are

---

[15] https://www.governor.pa.gov/newsroom/gov-wolf-announces-13-counties-will-move-to-yellow-phase-of-reopening-on-may-15/

refusing to enforce the Orders or refusing to prosecute individuals who may be charged with violating them.[16] [17] [18] [19] [20]

38.    On May 8, 2020, the Lebanon County District Attorney, Pier Hess, wrote a Facebook post on the District Attorney's Facebook Page:

> Through mandates and Orders, Governor Wolf assumed control of an individual's personal choices. He dictates how we dress, where we go, and what commerce operates for our 'well-being.' Effectively the Governor's Orders revoked our personal freedoms and liberties as individuals.[21]

39.    Several county government leaders are also in open defiance of these Orders.

a.    On May 8, 2020, Lebanon County Officials informed the Governor that they are moving themselves into the Yellow Zone.[22]

---

[16] https://pittsburgh.cbslocal.com/2020/05/07/greene-county-district-attorney-will-not-prosecute/

[17] https://www.facebook.com/CumberlandCountyPaSheriffsOffice/posts/3180137991997343?__tn__=K-R

[18] pittsburgh.cbslocal.com/2020/05/08/beaver-county-district-attorney-businesses-opened/

[19] https://pittsburgh.cbslocal.com/2020/05/08/armstrong-county-no-citations-violate-gov-wolfs-order/?fbclid=IwAR3h0BydMQjeFOr9q1ZHOLP8lhR1pkxZrdrohjQ5l27Bp-WdGmrRmD9bUt0

[20] COVID-19-Enforcement-Guidance-Updated-05082020.pdf

[21] Lebanon County Facebook Page. The link is too long to copy here.

[22] http://www.pressandjournal.com/stories/lebanon-county-officials-tell-gov-wolf-we-are-moving-into-the-yellow-phase-next-friday,92264?fbclid=IwAR2EWPXFVGPFQEnL3BqvkfFFkFpvt2ifkz2OHaHwnALR5DgBqFpHhMQTkZ8

11

b.      On May 8, 2020, the Dauphin County Commissioners announced they were moving themselves into the Yellow Zone. [23]

c.      On May 8, 2020, the Chairman of the Dauphin County Commissioners, Jeff Haste, sent a letter to the people of Pennsylvania on behalf of the entire Board of County Commissioners, stating, "Enough is enough. It is time to reopen the Commonwealth of Pennsylvania and return our state to the people (as prescribed by our Constitution) and not run it as a dictatorship."[24]

40.    There is now open defiance of the Governors' Orders by many elected officials, including law enforcement officials.

41.    These Orders have deprived the Plaintiffs of their constitutional rights as set forth herein and have caused significant financial harm and devastation to their businesses. See the attached Statements from the Plaintiffs detailing said harm. (True and correct copies of the Plaintiffs' statements are incorporated herein by reference, made a part hereto and marked as Exhibits B- E).

---

[23] https://local21news.com/news/local/dauphin-county-plans-to-move-to-yellow-phase-despite-the-governors-orders
[24] http://www.pressandjournal.com/stories/chairman-of-dauphin-county-commissioners-tells-wolf-to-stop-running-state-as-dictatorship-open,92261

42.     The Governor stated about his Business Closure Order, "It is devastating the economy, no question about it."[25]

43.     The economic harm caused by these Orders is obvious. However, here is a brief compilation of statements and economic data. These Orders and similar orders by governors across the country are causing unprecedented damage to the economy. The Wall Street Journal reports at least one-quarter of the U.S. economy has been shutdown, which has never occurred on such a wide scale before. It also reports U.S. daily economic output has declined about thirty percent since the week just before the business closure and shut down orders were issued.[26] Janet Yellen, the former Chairwoman of the Federal Reserve states that America is in the throes of an "absolutely shocking" downturn and will experience at least a 30% contraction of Gross Domestic Product in the second quarter. She explained, "This is a huge, unprecedented, devastating hit..."[27] And, other, "Economists now project a record-shattering 40% annual decline in U.S. economic output for the April-June

---

[25] https://www.pennlive.com/news/2020/04/gov-tom-wolf-vetoes-bill-that-could-allow-more-pa-businesses-to-reopen.html

[26] https://www.wsj.com/articles/state-coronavirus-shutdowns-have-taken-29-of-u-s-economy-offline-11586079001

[27]   https://www.msn.com/en-us/money/markets/janet-yellen-says-second-quarter-gdp-could-plunge/ar-BB12dTYE

quarter."[28]  Since March 15, 2020, nearly 1.7 million Pennsylvanians have filed for

unemployment compensation (UC). Between 20 and 25 percent of all of the state's

workers have been laid off. UC claims could cost the state between $4.5 billion

and $6 billion by the end of the next fiscal year.[29] There was such a huge number

of UC claims the system crashed.[30]  The director of Pennsylvania's largest

association of manufacturers described the Executive Order as, "overly-broad and

imprecise" and will "unnecessarily inflict lasting economic damage."[31]

Pennsylvania now faces an estimated $2.7 to $3.7 billion dollar budget shortfall.[32]

The Pennsylvania Fiscal Office stated, "Taxpayers should be prepared for a

significant reduction in state resources. What we're seeing, there's just no

precedent for it."

---

[28] https://www.pennlive.com/coronavirus/2020/04/experts-look-at-the-coronavirus-effect-on-us-economy-and-say-theyve-never-seen-anything-like-this.html

[29]  https://www.post-gazette.com/news/state/2020/04/08/Pennsylvania-facing-up-to-4-billion-budget-shortfall-as-COVID-19-shutdown-upends-state-budget/stories/202004080133

[30]  https://pittsburgh.cbslocal.com/2020/04/13/pa-unemployment-compensation-continued-claims-system-is-down/

[31]  https://www.pennlive.com/coronavirus/2020/03/pa-manufacturers-association-calls-pa-governors-coronavirus-related-closures-a-panicked-order.html

[32]  https://www.post-gazette.com/news/state/2020/04/08/Pennsylvania-facing-up-to-4-billion-budget-shortfall-as-COVID-19-shutdown-upends-state-budget/stories/202004080133

**The Claims**

**Count I**
**Procedural Due Process**
**42 U.S.C.S. § 1983**
**(As to all Plaintiffs)**

44.    The averments in the preceding paragraphs are incorporated herein by reference as if set forth in full and are made a part hereto.

45.    The Business Closure Order denied Plaintiffs their right of procedural due process guaranteed by U.S. Const. amends. V, XIV by ordering the physical operations of their businesses be closed without any form of pre or post deprivation due process. See *Fuentes v. Shevin*, 407 U.S. 67 (1972); *Rogin v. Bensalem Twp.*, 616 F.2d 680 (3d Cir. 1980); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982); *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264 (1981).

46.    The Business Closure Order and its List are not in the public interest, not reasonably necessary to carry out the purpose of the Proclamation and causes an undue burden on the Plaintiffs and thus violates the U.S. Constitution. *See Lawton v. Steele*, 152 U.S. 133 (1894).

47.    The Proclamation does not expressly state the purpose for the Business Closure Order, but references the Governor's power under the Disease Act, "to determine and employ the most efficient and practical means for the prevention and suppression of disease. 71 P.S. § 532(a), 71 P.S. 1403(a)."

48.    The Press Release accompanying the Business Closure Order states the purpose, "...to slow the spread of COVID-19."[33]

49.    The Business Closure Order is not "the most efficient and practical means for the prevention and suppression of disease." The Business Closure Order has not prevented or suppressed COVID-19 nor has it slowed the spread; COVID-19 has spread exponentially during the period of time the Business Closure Order has been in effect. Instead, the Business Closure Order has forced the closure of Plaintiffs and tens of thousands of businesses, deprived those business owners of their constitutional rights, caused over one million Pennsylvanians to lose their jobs, and has caused severe economic hardship and devastation to Plaintiffs and all businesses and entities closed by the Business Closure Order and to the entire Pennsylvania economy.

50.    Furthermore, the classifications on the List are not, "the most efficient and practical means for the prevention and suppression of disease." In fact, the List is not rationally related to the prevention or suppression of COVID-19; the List determines which industries and thus business are "life-sustaining" or "non-life sustaining." These terms do not define or identify businesses that do or do not prevent or control the suppression of COVID-19.

---

[33] https://www.governor.pa.gov/newsroom/all-non-life-sustaining-businesses-in-pennsylvania-to-close-physical-locations-as-of-8-pm-today-to-slow-spread-of-covid-19/

51.     Respondents have no evidence that the Business Closure Order has slowed the spread of COVID-19.

52.     The Press Release further states as the purpose, "And, we need to act now before the illness spreads more widely."

53.     On March 19, 2020, the day the Governor announced his Business Closure Order there were 185 cases of COVID-19 and one death in Pennsylvania, and COVID-19 was isolated to a few counties in Southeastern and Eastern Pennsylvania.[34]

54.     On May 9, 2020, there were 55,316 total COVID-19 cases and 3,688 deaths in Pennsylvania, and COVID-19 has spread to every county in Pennsylvania.[35]

55.     Thus, between the date of the Business Closure Order and today COVID-19 has spread exponentially throughout Pennsylvania.

56.     Thus, the Orders failed their objective of slowing or stopping the spread of COVID-19 before it spreads too widely.

57.     Further, the Respondents based their decision for the Business Closure Order and later the Stay-At-Home Order on the "data" and "science," which proved to be staggeringly wrong.

---

[34] https://kywnewsradio.radio.com/articles/news/live-updates-coronavirus-in-pennsylvania-march-19-2020
[35] https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx

58.     Actual evidence, not the projections used to form the basis of the Orders, reveals these Orders do more harm than good.

59.     Professor Johan Giesecke, one of the world's most senior epidemiologists, an advisor to the Swedish government, the first Chief Scientist of the European Centre for Disease Prevention and Control, and an advisor to the director general of the World Health Organization, has opined that:

  a. lockdown policies are not evidence-based;

  b. the models used to support the lockdowns are a dubious basis for public policy;

  c. the flattening of the curve is due to the most vulnerable dying first as much as the lockdown;

  d. COVID-19 is a "mild disease" and similar to the flu;

  e. the mortality rate will be much lower than the projected numbers because most people who get the disease will never even notice they were infected;

  f. it was the novelty of the disease that scared people and made political leaders want to look strong and decisive by ordering lockdowns; and

  g. the correct policy would have been to protect the elderly and the infirm and to allow the disease to have spread through the population so

that herd immunity can work to build the immunity of healthy

Pennsylvanians.[36]

60.     According to Professor Michael Levitt, Professor of Structural

Biology at the Stanford School of Medicine, and winner of the 2013 Nobel Prize

for Chemistry, the indiscriminate lockdown measures are "a huge mistake;" he

advocates a "smart lockdown" policy, focused on more effective measures,

focused on protecting elderly people; and he is unconvinced that the explanation

for flattening the curve is the result of social distancing and lockdowns. He

believes the "herd immunity" is the right approach and states, "There is no doubt in

my mind, that when we come to look back on this, the damage done by lockdown

will exceed any saving of lives by a huge factor."[37]

61.     Dr. John A Lee, a recently retired professor of pathology and a British

National Health Service consultant pathologist, stated about the lockdowns, "The

real point is that there isn't any direct evidence that what we are doing is actually

affecting the peak."[38]

---

[36] https://www.aier.org/article/lockdown-free-sweden-had-it-right-says-world-health-organization-interview-with-prof-johan-giesecke/

[37] https://unherd.com/thepost/nobel-prize-winning-scientist-the-covid-19-epidemic-was-never-exponential/

[38] https://www.spiked-online.com/2020/04/17/theres-no-direct-evidence-that-the-lockdowns-are-working/

62.     The Orders are also not in the public interest and cause an undue

burden on the Plaintiffs.

63.     The Business Closure Order's classification of businesses as non-life-

sustaining was arbitrary and capricious; for example accounting offices, and

"Other Specialty Stores," such as candy and chocolate retailers, are considered life-

sustaining, but Plaintiffs' businesses and entities are deemed to be non-life-

sustaining; pet-stores are deemed life-sustaining, yet pet-groomers deemed to be

non-life-sustaining; beer distributorships are deemed to be life-sustaining, yet

liquor stores to be non-life-sustaining; real estate services are non-life-sustaining,

yet accounting services are life-sustaining; political candidate committees are non-

life-sustaining, yet elected officials in state, county and municipal governments are

exempt from the Orders and Social Advocacy Organizations are deemed to be life-

sustaining; these are just a few of the many classifications that are arbitrary and

capricious and thus violate the United States Constitution. See *See Motor Vehicle*

*Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983); *Panama Ref.*

*Co. v. Ryan*, 293 U.S. 388 (1935); See *Sterling v. Constantin*, 287 U.S. 378, 388

(1932).[39]

---

[39] The undersigned counsel was pleasantly surprised to learn that his local tobacco
shop, where he purchases the tobacco products, that according to public health
officials, are killing him, has been open this whole time; apparently the Governor
has deemed the tobacco shop to be "life-sustaining" because it sells water bottles

64.     Defendants have not provided a cognizable explanation as to why Plaintiffs are on the non-life-sustaining list.

65.     The Governor has provided a circular definition of non-life-sustaining that means nothing.[40]

66.     The Business Closure Order's waiver process lacks administrative review, due process protections as more fully set forth below, and judicial review and thus does not satisfy long-standing minimum requirements for due process under the U.S. Constitution that apply even in times of war. See *Bowles v. Willingham*, 321 U.S. 503 (1944).

67.     By way of further explanation, the waiver process provides no right to a neutral arbiter, no right to a hearing, no right to counsel, no right to cross examine witnesses, no right to prompt review, no deadline for DCED to make a determination, no right to a reasoned decision, all of which are core elements and rights of due process.

---

and beef jerky. The undersigned counsel has never been threatened with the loss of water or beef jerky in his entire life including during this pandemic (for example, if he wants water he simply turns on his faucet and water comes out), so he does not understand why his tobacco store is considered to be life-sustaining, but certainly appreciates it! (There is no water shortage).

[40] The Governor defines non-life-sustaining as, "businesses that are not critical to sustaining life in a pandemic." See https://www.governor.pa.gov/newsroom/gov-wolf-secretary-levine-provideupdated-guidance-stress-need-for-compliance-as-cases-rise/

68.     The Business Closure Order's waiver process is arbitrary and capricious and thus violated the U.S. Constitution.

69.     The Governor's former family business, Wolf Home Products, a kitchen cabinet maker, was granted a waiver; then once the media discovered and publicized this, the Governor or DCED rescinded the waiver.

70.     It is unclear how a kitchen cabinet maker is life-sustaining in the first place, let alone how it went from non-life-sustaining, to life-sustaining to non-life-sustaining in a very short period of time without any facts about its business changing.

71.     In the waiver process, the Governor and his agents at DCED used the same arbitrary and vague words – life-sustaining and non-life-sustaining – to review and deny their waiver requests.

72.     The words life-sustaining and non-life-sustaining are not found in any law or regulation cited by the Defendants.

73.     The Governor, his Press Office or DCED simply made up these words for public relations reasons.

74.     These words cannot be reasonably understood as having any real meaning at all, let alone a logical, reasonable and necessary connection to the purpose of the Business Closure Order.

75.    The waiver process was shut down by the order of the Governor; thus it does not even exist for the untold numbers of Pennsylvania businesses and entities that were not able to apply in time.

76.    The waiver denial notice is a boilerplate email from DCED to the business that applied for the waiver; the denial notice provides no information as the standard or process used to determine the waiver.[41]

77.    Petitioners John Williams and Stephen Cassel are members of the Pennsylvania Association of Realtors (PAR). As a real estate agents, they have been on the non-life-sustaining list since the Business Closure Order was issued.

78.    On March 20, 2020, PAR applied for a waiver on behalf of its 35,000 members, including Plaintiffs Williams and Cassel.

79.    After PAR submitted its waiver, the Governor stated that in making determinations, DCED is "maintaining consistency" with an advisory issued by the

---

[41] Waiver Request DENIED:
By Executive Order dated March 19, 2020, and pursuant to powers granted to him by law, Governor Tom Wolf has ordered that no person or entity shall operate a place of business that is not a life-sustaining business, regardless of whether the business is open to members of the public. The Secretary of the Pennsylvania Department of Health has issued a similar order pursuant to powers granted to her by law. These orders (the "COVID-19 Orders") are necessary to stop the spread of the novel coronavirus COVID-19. In response to your request for an exemption from the applicability of the COVID-19 Orders, pursuant to the powers granted by law to the Governor and Secretary of Health to cope with the present disaster emergency and to prevent and control the spread of disease, it has been determined that the business identified above must remain closed.

Department of Homeland Security's Cybersecurity and Infrastructure Security Agency ("CISA Advisory").[42]

80.     On March 28, 2020, CISA released a "Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response," which deems all real estate services and workers essential.[43]

81.     If the Governor was in fact "maintaining consistence" with CISA he would have declared all real estate services life-sustaining and opened them or at lease granted PAR's waiver request.

82.     However, contrary to his earlier claim, the Governor refused to re-classify real estate services as life-sustaining.

83.     On April 11, 2020, the Governor denied PAR's waiver request.[44]

84.     The Stay-At-Home Order was imposed the same way without due process of law either pre or post deprivation due; without any notice or opportunity to object at any time, with no waiver process, no administrative review and no

_____

[42] https://www.scribd.com/document/452553495/UPDATED-1-45pm-March-27-2020-Life-Sustaining-Business-FAQs

[43] https://www.cisa.gov/sites/default/files/publications/CISA_Guidance_on_the_Essential_Critical_Infrastructure_Workforce_508C_0.pdf

[44] The Governor denied PAR's waiver request for its thousands of members after he had closed the waiver process for new submissions; thus the thousands of Pennsylvania real estate agents and REALTORS who did not apply for a waiver because PAR had done so on their behalf were then prohibited from applying for their own waiver because the Governor's quickly imposed deadline had passed.

24

judicial review. The Defendants deemed the waiver process was all the process that was due for the businesses and entities they closed, but did not even provide a waiver process for individuals wishing to be deemed exempt from the Stay-At-Home.

85.     Further, the Stay-At-Home Order applied to all Pennsylvanians regardless of the health or age or whether they were even infected with or exposed to COVID-19; as such it bears no rational relationship to its purpose and is arbitrary and capricious.

WHEREFORE, Plaintiffs pray this Honorable Court declare the Business Order, the List and its Waiver process and the Stay-At-Home Order to be in violation of the Plaintiffs' procedural due process rights guaranteed by the U.S. Const. amends. V, XIV, and to assess and order damages to be paid by Defendants to Plaintiffs for said violation of their constitutional rights.

## Count II
## Substantive Due Process
## 42 U.S.C.S. §1983
## (As to All Plaintiffs)

86.     The averments in the preceding paragraphs are incorporated herein by reference as if set forth in full and are made a part hereto.

87.     The Business Closure Order, the Stay-At-Home Orders and the School Closure Order shocked the conscience of Plaintiffs.

88.     Never before in the history of Pennsylvania has any Governor issued a statewide Business Closure Order forcing tens of thousands of owners and workers out of their businesses and prohibiting them, under criminal penalty, from going to work.

89.     Never before have businesses been placed on a life-sustaining and non-life-sustaining List and then those on the non-life-sustaining List forced to be closed immediately.

90.     Never before in the history of Pennsylvania has the entire Commonwealth been forced by law to Stay-At-Home by Order of the Governor.

91.     Never before have all the schools in Pennsylvania been closed by Order of the Governor.

92.     These orders are arbitrary and unreasonable and have no substantial relation to the public health, safety, morals or general welfare.

93.     The Business Closure Order stunned Plaintiffs; it was issued @ 5:00 PM on March 19th, 2020 and gave Plaintiffs three hours to vacate their physical work premises by the deadline of 8:00 PM that evening.

94.     These Orders have denied the Plaintiffs their rights, freedoms, liberties, privileges and immunities such as the freedom to leave one's home, the freedom to travel, the freedom to work, the freedom to parent and direction the

education of one's children; these fundamental rights are "deeply rooted in this Nation's history and tradition."

95.   The Governor's School Closure Order denied all Pennsylvania school-age children the right to public education.

96.   Plaintiffs Missino and Cassel have children in Pennsylvania's school system.

97.   Pennsylvanians have the right to public education provided by the Commonwealth. "The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." Pa. Const. art. 3, § 14.

98.   Plaintiffs' school-children are now receiving education from their schools via distance learning; this is not a thorough or efficient education.

99.   Plaintiffs as parents have a substantive due process right to parent their children; Plaintiffs strongly desire that their children receive the education they are entitled to by the Pennsylvania Constitution; the Governor's School Closure Order is infringing upon that right.

100.   Plaintiffs are subject to essentially house arrest under the Stay-At-Home Order that prevents them from fully exercising their liberty and freedom as Americans.

101.   Furthermore, Respondents did not even attempt to determine whether Plaintiffs were infected with or had been exposed to COVID-19 before ordering them to stay at home.

102.   Plaintiffs have a substantive due process right against arbitrary and irrational state actions against their liberty.

103.   Plaintiffs' fundamental, personal rights cannot be abridged without a compelling state interest and the state must use the least restrictive means to effectuate that interest.

104.   Shutting down Plaintiffs' businesses and ordering them to stay at home, with only certain exceptions to leave, under penalty of arrest, is far from the least restrictive means of attempting to prevent the spread of COVID-19.

105.   On April 29, 2020, the Pennsylvania Department of Health reported that over sixty-five percent of the COVID-19 deaths have occurred in Pennsylvania's nursing homes.

106.   This, and not at Plaintiffs' businesses or with the Plaintiffs' themselves, is where the risk of serious illness and death is.

107.   This is where the Respondents, who are statutorily obligated to regulate these homes, should have employed COVID-19 prevention and mitigation efforts using their statutory powers under the Disease Act, not the indiscriminate and mass closure of tens of thousands of businesses and forced shut in of tens of

thousands if not millions of Pennsylvanians, which included Plaintiffs, and the statewide closure of all Pennsylvania schools.

WHEREFORE, Plaintiffs pray this Honorable Court declare the Business Closure Order, the Stay-At-Home Order and the School Closure Order to violate Plaintiffs' substantive due process rights guaranteed by the U.S. Const. amends. V, XIV, IX, and U.S. Const. Article IV, Section 2, and to assess and order damages to be paid by Defendants to Plaintiffs for said violation of their constitutional rights.

**Count III**
**Unjust Taking Without Just Compensation**
**42 U.S.C.S. §1983**
**(As to Kraig Nace/Detailed Attention, Inc. Only)**

108.   The averments in the preceding paragraphs are incorporated herein by reference as if set forth in full and are made a part hereto.

109.   The Business Closure Order prohibits Plaintiffs from accessing, using or controlling the physical operations of their business.

110.   Plaintiff Kraig Nace owns real property situate at 1 South Market St., Duncannon, Perry County, PA 17020 and leases that property to his company, Detailed Attention, Inc.

111.   From this location Plaintiff Detailed Attention, Inc. operates the its three business lines and uses its personal property in the operation.

29

112.   The Business Closure Order denies Plaintiff Kraig Nace and Detailed Attention, Inc., of the economically viable use of their business premises and the personal property situate there.

113.   The Orders constitute a taking of Plaintiffs real and personal property without just compensation and thus violated U.S. Const. amends. V. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992).

WHEREFORE, Plaintiffs request that the Defendants be ordered to pay just compensation to the Plaintiff for the taking of their property pursuant to Plaintiffs right under the U.S. Const. amend V.

<u>**Count IV**</u>
<u>**Payment for Use of Plaintiffs' Property**</u>
<u>**Pursuant to 35 Pa.C.S. § 7313 (10)**</u>
<u>**(As to All Plaintiffs)**</u>

114.   The averments in the preceding paragraphs are incorporated herein by reference as if set forth in full and are made a part hereto.

115.   The Governor issued his Business Closure Order citing his power under the Emergency Management Services Code (the "Code").

116.   The Governor declared all of Pennsylvania a "disaster area," under the Code, including the places of Plaintiffs' business locations.

117.   The Governor stated he was required to evacuate and prohibit access to Plaintiffs' places of business in order to prevent the spread of COVID-19.

30

118.   Plaintiffs all have ownership, leasehold or privilege and use interests in their physical business or entity premises.

119.   The Governor used the private facilities and property of Plaintiffs' both real and personal by evicting Plaintiffs from same and prohibiting their use of same in order to contain the disaster he declared there.

120.   The Governor failed to obtain the agreement or pay Plaintiffs for the use of their property in violation of 35 Pa.C.S. § 7313 (10).[45]

WHEREFORE, Plaintiffs request that Defendants be ordered to pay Plaintiffs for the use of their property pursuant to 35 Pa.C.S. § 7313 (10).

<u>**Count V**</u>
<u>**Equal Protection**</u>
<u>**42 U.S.C.S. §1983**</u>
<u>**(As to All Plaintiffs)**</u>

121.   The averments in the preceding paragraphs are incorporated herein by reference as if set forth in full and are made a part hereto.

122.   Defendants' classification of Pennsylvania businesses and entities into life-sustaining and non-life-sustaining is arbitrary and lacks rationality. Thus it violates the equal protection clause of U.S. Const. amend. XIV. See *McGowan v. Maryland*, 366 U.S. 420, 535 (1961).

---

[45] "To plan and make arrangements for the availability and use of any private facilities, services and property and, if necessary and if in fact used, provide for payment for use under terms and conditions agreed upon." 35 Pa.C.S. § 7313

123.   The classification of Pennsylvania businesses and entities into life-sustaining and non-life-sustaining treats similarly situated businesses and entities differently.

124.   The Business Closure Order arbitrarily and irrationally classifies entire industries. The Order closed the physical operations of Vote for Bill Benner and all entities in the Business, Professional, Labor, Political or Similar Organizations class.

125.   However, the Business Closure Order permits Social Advocacy Organizations to remain open.

126.   Yet, Social Advocacy Organizations and Vote for Bill Benner all appear in the same Industry, Sector and Subsector categories of the List.

127.   Defendants have claimed that Social advocacy groups are deemed to be life-sustaining because they advocate for vulnerable individuals during a pandemic.

128.   However, Vote Bill Benner also advocates for the vulnerable business owners and workers whose businesses and jobs have been devastated by the Governor's Business Closure Order.

129.   According to the Governor, Vote Bill Benner's advocacy is not life-sustaining and shall remain closed.

130.   The two groups are similar. Yet, the Governor keeps one open and one closed.

131.   The Governor is permitting some organizations to conduct their advocacy from the place of their physical operations and bases his decision on the content of their advocacy, while denying it to others similarly situated.

132.   By way of further example, it is arbitrary and irrational that Plaintiffs John Williams and Stephen Cassel, real estate agents, are on the non-life-sustaining List, but accountants are on the life-sustaining list.

133.   It is arbitrary and irrational that pet stores are on the life-sustaining list, yet pet-groomers are on the non-life-sustaining list.

134.   Whether a business is life-sustaining or not is irrelevant to achieving the Governor's stated objective.

135.   Thus, because the Order's classification system is irrelevant to achieving the state's objective, and because it does not treat similarly situated businesses and entities the same, it violates the equal protection clause. *Id.* *McGowan* at 422.

WHEREFORE, Plaintiffs pray this Honorable Court declare the Business Closure Order and its List to violate Plaintiffs' rights to equal protection of the laws guaranteed by the U.S. Const. amends. V, XIV, and to assess and order

damages to be paid by Defendants to Plaintiffs for said violation of their constitutional rights.

**Count VI**
**First Amendment**
**42 U.S.C.S. §1983**
**(As to All Plaintiffs)**

136.   The averments in the preceding paragraphs are incorporated herein by reference as if set forth in full and are made a part hereto.

137.   Plaintiffs have the right to free speech and assembly. U.S. Const. amend. I.

138.   However, the Order prohibits Plaintiffs, and all businesses and entities on the non-life-sustaining List, from exercising their right to free speech and assembly not only at their places of business, but at any other business or entity on the non-life-sustaining List.

139.   This is particularly oppressive for Vote Bill Benner, which is a candidate committee, because all "Business, Professional, Labor, Political or Similar Organizations" are on the non-life-sustaining List; this means no political events, including assemblies, forums, debates, fundraising events, and others, may be held at the physical location of any Business, Professional, Labor, Political or Similar Organizations due to the Order; these are the entities that typically host or sponsor such activity; it also means no such events may be held at any other business or entity on the non-life-sustaining List.

34

140.   Further, the Stay-At-Home Order compels Pennsylvanians to stay-at-home except to participate in "life-sustaining services."[46] The Stay-At-Home Order states:

> Individuals are permitted to engage in outdoor activities; ***however, gatherings of individuals outside of the home are generally prohibited except as may be required to access, support, or provide life-sustaining services as outlined above.***

(emphasis added).

141.   Neither Order declares speech or assembly to be "life-sustaining."

142.   In the Governor's Order for the "Red Zone," all "large gatherings" of groups is prohibited.

143.   The Governor's Order for the "Yellow Zone," prohibits, "Large Gatherings of More Than 25."

144.   The Pennsylvania State Police have announced their intention to enforce these Orders.[47]

---

[46] https://www.governor.pa.gov/wp-content/uploads/2020/04/20200401-GOV-Statewide-Stay-at-Home-Order.pdf

[47] https://www.poconorecord.com/news/20200322/state-police-fines-possible-jail-await-anyone-who-defies-wolfs-shut-down-order

145.   Law enforcement officials have arrested or cited businesses and/or individuals for violating these Orders.[48] [49] [50]

146.   Thus, the Order, in tandem with the Governor's Stay-At-Home Order, prohibits all Pennsylvania businesses and entities on the non-life-sustaining list and all Pennsylvanians, in "large groups," from exercising their right to speech and assembly in streets and parks and in fact anywhere in Pennsylvania.

WHEREFORE, Plaintiffs pray this Honorable Court declare the Business Closure Order and Stay-At-Home Order violate Plaintiffs' rights to free speech and assembly guaranteed by the U.S. Const. amend. I, and to assess and order damages to be paid by Defendants to Plaintiffs for said violation of their constitutional rights.

**Count VII**
**Article IV Clause 2**
**The Guarantee Clause**
**42 U.S.C.S. § 1983**
**(As to All Plaintiffs)**

147.   The averments in the preceding paragraphs are incorporated herein by reference as if set forth in full and are made a part hereto.

---

[48] https://www.wgal.com/article/police-in-columbia-arrest-two-people-for-violating-gov-tom-wolfs-statewide-stay-at-home-order/32045856#
[49] https://www.pennlive.com/news/2020/04/york-county-woman-faces-200-ticket-from-state-police-under-gov-wolfs-stay-at-home-order.html
[50] https://triblive.com/news/pennsylvania/state-police-have-cited-2-warned-8-for-violating-stay-at-home-order/

148.   The United States Constitution obligates, "The United States to guarantee to every State in this Union a Republican Form of Government." U.S. Const. Article IV, Cl. 2.

149.   The Federal Judiciary is a branch of the government of the United States of America.

150.   As such this Court is required to ensure the people of Pennsylvania's right to a Republican form of government is guaranteed.

151.   The hallmarks of a Republican form of government include the Rule of Law, the separation of powers and the guarantee of the fundamental rights, privileges and immunities of the people.

152.   In order to be a Republican form of government, Pennsylvania's government must obey its own constitution and statutes, or change those laws by legally valid means.

153.   The Governor has no authority for his Orders under Pennsylvania law.

154.   The Governor claims he has authority for his Orders in the Pennsylvania Constitution and certain statutes namely, the Emergency Management Services Act (the "Code") and 35 Pa. Cons. Stat. § 7101 and the Disease Prevention and Control Law at 35 Pa. Stat. Ann. § 521.1 (hereinafter the "Disease Act").

155.   However, the Code addresses "disasters," such as tornados, floods, hurricanes, explosions, etc., not communicable diseases.

156.   The Disease Act addresses the spread of communicable diseases. But, the Disease Act does not authorize the Orders.

157.   It only empowers the Governor through his Secretary of Health to take action against persons suspected of being infected with, or a carrier of, or likely to have been exposed to a communicable disease; not businesses let alone businesses at which no COVID-19 has been identified, and not persons who do not fit the above criteria. And, these actions must be done through the courts, with due process rights for the person subject to them. None of that has happened in this case.

158.   The Orders violate the Disease Act, which is likely why the Governor also claims his authority is in the Code, which permits him to control the ingress and egress of disaster areas as if, for example, he is trying to save Plaintiffs from a hurricane by conducting an evacuation of their businesses or from a tornado by ordering Plaintiffs to shelter in place.

159.   However, obviously none of that has occurred. The Governor claims the entire Commonwealth of Pennsylvania is a "disaster area" under the Code and as such he has free rein to enforce laws, suspend laws, make new laws, and

adjudicate cases such as waiver applications without interference or involvement of the General Assembly or the Judiciary.[51]

160.   On May 7, 2020, the Governor issued another executive order stopping mortgage foreclosure and evictions for a period of sixty days.

161.   The Governor claims his authority for this temporary suspension of the laws is in the Code which states in pertinent part, the Governor may suspend or modify any:

> public health, safety, zoning, transportation …or other requirement of statute or regulation within this Commonwealth when by proclamation the Governor deems the suspension or modification essential to provide temporary housing ***for disaster victims.***

35 Pa.C.S. § 7302

162.   So, now, every Pennsylvania tenant and mortgagee, which must be millions of Pennsylvanians, are "disaster victims," even though the overwhelming majority of Pennsylvanians who either have not contracted COVID-19 or did, but were unaware because it is so mild, and did and have recovered.

163.   Plaintiff Detailed Attention, Inc., owns and operates a property management company called Duncannon Rentals, which manages four

---

[51] The Governor's Proclamation states in pertinent part, "WHEREAS, in addition to general powers, during a disaster emergency I am authorized specifically to control ingress and egress to and from a disaster area and the movement of persons within it and the occupancy of premises therein; and suspend or limit the sale, dispensing, or transportation of alcoholic beverages, firearms, and combustibles. 35 Pa. C.S. § 7301(f)…"

residential apartments, three commercial spaces, and one single-family residential property.

164.   Plaintiff Detailed Attention, Inc., has lease agreements with the tenants and has rights under the leases and Landlord Tenant Act to require the timely payment of rent and to utilize the court system to evict tenants for their failure to pay rent.

165.   This latest executive order suspending evictions and foreclosures is a violation of the Pennsylvania Constitution's *ex post facto* clause because it impairs Plaintiff Detailed Attention, Inc.'s, rental agreements and probably millions of other lease and mortgage agreements entered into between and among other Pennsylvanians. [52]

166.   As set forth *supra* the Governor decided to close tens of thousands of businesses across the state in response to a viral illness, decided which businesses to close and which to allow to remain open, decided whether to grant or deny waivers submitted by businesses, afforded no further administrative review for those businesses denied a waiver, and litigated in court against permitting any judicial review of waiver denials.

---

[52] Art. I, § 17. *Ex post facto* laws; impairment of contracts.
No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed.

167.   The Pennsylvania Supreme Court affirmed all of the actions of the Governor including his denial of judicial review. The Pennsylvania Supreme Court even held that Pennsylvania businesses and entities on the non-life-sustaining List are not entitled to judicial review of the denial of a waiver application by finding no basis for a right of appeal under the Pennsylvania Constitution in this circumstance. Article V, Section 9 states:

> There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or **from an administrative agency to a court of record or to an appellate court**, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.

> Pa. Const. art. V, § 9 (emphasis added).

*Majority Opinion*, Page 45.

168.   In order to reach the conclusion that DCED is not an administrative agency, even though it was receiving and deciding tens of thousands of waiver applications via its website and using its personnel and their purported experience in this area, the Pennsylvania Supreme Court concluded it is the Governor himself who apparently made the decisions in the each of the tens of thousands of waiver requests. *Majority Opinion*, Page 46.

169.   Further, the Pennsylvania Supreme Court concluded:

Neither the Governor nor the Secretary is an "administrative agency." Because Article V, Section 9 does not confer a right of appeal from an executive decision of the Governor or the Secretary, no right of appeal lies in this instance.

41

*Majority Opinion*, Page 46

170.   However, Pennsylvania law is clear that the Governor is an Executive

Agency. An Executive Agency is a Commonwealth Agency. And Commonwealth

Agencies are the "administrative agencies," identified in the Pennsylvania

Constitution. 2 Pa.C.S. § 101.

171.   Regardless whether the Governor or his agents at DCED administered

the waiver process, businesses denied a waiver should have had a right to appeal.[53]

172.   Further, a Commonwealth Agency is an "administrative agency"

identified in the Pennsylvania Constitution. 2 Pa.C.S. § 103 (a).

173.   Thus, the thousands business owners, including Plaintiffs John

Williams and Stephen Cassel, who had their waiver application submitted via PAR

denied or ignored, were denied the right of judicial review.

174.   Three Justices of the Pennsylvania Supreme Court were very

concerned about the lack of judicial review:

> I am less confident, however, in the majority's conclusion that
> "summary administrative action" by the executive branch to close
> many businesses throughout the Commonwealth must evade judicial
> review as a check against arbitrariness. Majority Opinion, *slip op.* at
> 42. While the majority repeatedly stresses that such closure is

---

[53] "Any person aggrieved by an adjudication of a Commonwealth agency who has
a direct interest in such adjudication shall have the right to appeal therefrom to the
court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to
judiciary and judicial procedure)." 2 Pa.C.S. § 702

> temporary, *see id.*, this may in fact not be so for businesses that are unable to endure the associated revenue losses. Additionally, the damage to surviving businesses may be vast.

*Concurring and Dissenting Opinion*, Page 2 (A true and correct copy of said document is incorporated herein by reference, made a part hereto and marked as Exhibit F).

175.   Thus, the Governor essentially wrote law by declaring he could close all Pennsylvania businesses and order all Pennsylvanians to stay in their homes, continued to write law when he classified businesses into life-sustaining and non-life-sustaining, became the judiciary when he adjudged the waiver requests and denied judicial review and then resumed his role as the executive by threatening to enforce and enforcing the Orders through citations, arrests and the other methods he has cited.

176.   This is essentially the three branches of government consolidated into the Office of the Governor. This is not a Republican form of government.

177.   On or about May 8, 2020, county law enforcement officials and county commissioners from many counties throughout Pennsylvania began openly denouncing these Orders as unconstitutional and/or arbitrary, declaring that they will refuse to enforce them and are declaring their businesses open and their residents freed from the Stay-At-Home Orders in direct contradiction to the Governor's Orders.

178.   On May 9, 2020, the Pennsylvania State Police repeated their threat to enforce the Orders and announced as of the previous Monday, they had issued 312 warnings and 1 citation for violations of the Business Closure Orders; and 33 warnings and 7 citations for violations of the Stay-At-Home Order.[54]

179.   County law enforcement officials or agencies in several counties have denounced the Orders and announced they will not enforce them, whereas the PSP, which is controlled by the Governor, has announced it will enforce them.

180.   There is a significant breakdown in the Rule of Law; and the Governor has usurped the roles of the General Assembly and the Judiciary during this gubernatorial-declared disaster; thus the Plaintiffs are not receiving the Republican form of government the U.S. Constitution guarantees them.

WHEREFORE, Plaintiffs pray this Honorable Court declare that Pennsylvania shall once again have a Republican form of government and declare these Orders have violated U.S. Const. Article IV, Cl. 2 and assess and order damages to be paid by Defendants to Plaintiffs for said violation of their constitutional rights.

**Count VIII**
**U.S. Const. amend I – Freedom of Religion**
**42 U.S.C.S. § 1983**
**(As to Plaintiff Williams)**

---

[54] https://www.wkbn.com/news/pennsylvania/pennsylvania-state-police-say-closure-orders-will-be-enforced/?fbclid=IwAR3eL-yaUrxh_2TuE2pJaQzeL2qRXHdkNEuxWIoBI3JsspdQg2nYHDSmc-M

181.   The averments in the preceding paragraphs are incorporated herein by reference as if set forth in full and are made a part hereto.

182.   Plaintiff Williams has two school-age children who attend Catholic school. Plaintiff Williams has chosen Catholic school for his children because religion is a significant part of his family and is how he wants his two school-aged children to be raised and educated.

183.   Plaintiff Williams' two minor children have attended St. Cornelius parish school, which is a Catholic school within the Archdiocese of Philadelphia, and is located in Delaware County, Pennsylvania.

184.   However, due to the Governor's School Closure Order and the extreme financial hardship it caused, St. Cornelius parish was forced to close its primary school for next year.

185.   Thus, Plaintiff Williams had to relocate his family to a new parish, St. Maximilian Kolbe parish, which is part of the Archdiocese of Philadelphia, and is located in West Chester, Chester County, Pennsylvania and enroll his two children in its parish school.

186.   However, at St. Maximillian, because the school has been closed by the Governor, Plaintiff Williams' children are not able to benefit from the traditional Catholic school education.

187.   During the Williams children's Catholic school experience they had attended mass, sang in the cherub choir and had daily prayers; all of this in-school activity has been prohibited and stopped by the Governor's School Closure Order.

188.   Plaintiff Williams' right, and the right of his two school-aged children, to exercise their freedom of religion by attending regular worship and other religious services and ceremonies at their parish church during the school day, has been infringed.

WHEREFORE, Plaintiff requests this Court declare the Governor's School Closure Order violates Plaintiff's and his children's First Amendment right to the free exercise of religion.

**Count IX**
**Right to Public Education**
**Pa. Const. art. 3, § 14.**
**42 U.S.C.S. § 1983**
**(As to Plaintiffs Missino and Cassel)**

189.   The averments in the preceding paragraphs are incorporated herein by reference as if set forth in full and are made a part hereto.

190.   The Pennsylvania Constitution guarantees Pennsylvanians the right to, "a thorough and efficient system of public education to serve the needs of the Commonwealth." Pa. Const. art. 3, § 14.

191.   Plaintiff Missino has a school-age child who attends public school.

46

192.   Plaintiff Missino's child is in a gifted individual education plan and therefore has special needs.

193.   The school is designed to meet the student's educational needs within the physical setting of the schools.

194.   The remote contact the student is receiving is insufficient for the student's educational and special needs.

195.   Plaintiff Cassel also has children in the public schools and who are receiving distance learning, which is entirely insufficient for their educational needs.

WHEREFORE, Plaintiffs request this Court declare the Governor's School Closure Order violates Plaintiffs' and their children's Pennsylvania Constitutional right to a thorough and efficient public education.

### Request for Relief

a.   Declaratory Judgment that Business Closure Order, Stay-At-Home Order and School Closure Order are unconstitutional on their face and as applied to the Plaintiffs;

b.   Permanent Injunction;

c.   Monetary damages for the deprivation of Plaintiffs' constitutional rights per 42 U.S.C. §1983 and §1988;

d.    Monetary damages to Plaintiffs pursuant to 35 Pa.C.S. 7313 (10);

e.    Monetary damages for the uncompensated taking of Plaintiff Nace

and Detailed Attention, Inc., real and personal property guaranteed by U.S. Const.

V per 42 U.S.C. §1983 and §1988;

f.    Cost of suit and attorney's fees per 42 U.S.C. §1983 and §1988.

Respectfully submitted,

_/s/_*Marc A. Scaringi*_____
Marc A. Scaringi, Esquire
Pa Supreme Court ID No. 88346
Brian Caffrey, Esquire
Supreme Court ID No. 42667
Attorney for Plaintiffs
Scaringi Law
2000 Linglestown Road, Suite 106
Harrisburg, PA 17110
marc@scaringilaw.com
brian@scaringilaw.com
717-657-7770 (o)
717-657-7797 (f)

<u>VERIFICATION</u>

I, William Benner, on behalf of myself and as the candidate for whom the Vote Bill Benner Committee is organized, hereby swear or affirm that the above-written statements of fact in the foregoing Complaint are true and correct to the best of my knowledge, information and belief and that I make said statements of fact subject to the penalties of 18 Pa.C.S §4904 relating to unsworn falsification of authorities.

William Benner