## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

William Benner, Vote Bill Benner   :<br>
Committee, Nichole Missino, and   : No:  1:20-CV-00775-JEJ<br>
d/b/a Giovanni's Media Barber,   :<br>
Kraig Nace, Detailed Attention, Inc.,   :<br>
John Williams, Stephen Cassel,   :<br>
Iacobucci Formal Wear<br>
  :<br>
        Plaintiffs/Movants   :<br>
  : Brief in Support of<br>
    v.   : Motion for a Temporary<br>
  : Restraining Order<br>
Thomas W. Wolf, in his official   :<br>
Capacity as Governor of the   :<br>
Commonwealth of Pennsylvania,   :<br>
Rachel Levine, MD, in her official   :<br>
capacity as Secretary,   :<br>
Pennsylvania Department of Health   :<br>
Dennis M. David, Secretary,   :<br>
Pennsylvania Department of   :<br>
Community and Economic   :<br>
Development   :<br>
        Defendants/Respondents :

## **Brief in Support of Motion for a Temporary Restraining Order**

*/s/ Marc A. Scaringi*<br>
Marc A. Scaringi, Esquire<br>
PA Supreme Court ID No. 88346<br>
Brian C. Caffrey<br>
PA Supreme Court ID No. 42667<br>
Attorneys for Plaintiffs

## <u>Table of Contents</u>

**Procedural History of Case**……………………………………………………**1**

**Statement of Facts**………………………………………………………**1-5**

**Statement of Questions Involved**……………………………………………**6**

**Argument**……………………………………………………………**6-22**

## Table of Authorities

**Cases:**

*Fuentes v. Shevin*, 407 U.S. 67 (1972)…………………………………………….6

*Miller v. Skumanick*, 605 F. Supp. 2d 634 (M.D. Pa. 2009)……………………6, 17

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)…………………………….7

*Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264 (1981)………...7

*Ex parte Milligan*, 71 U.S. (4 Wall.) 2, 107, 18 L.Ed. 281, 291 (1866)……………9

*Sterling v. Constantin*, 287 U.S. 378 (1932)………………………………...9, 21

*Lawton v. Steele*, 152 U.S. 133 (1894)……………………………………………11

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*

    463 U.S. 29 (1983)……………………………………………………14

*Sterling v. Constantin*, 287 U.S. 378 (1932)………………………………...14

*Citizens United v. FEC*, 558 U.S. 310 (2010)……………………………………15

*Hague v. Comm. for Indus. Org.*, 307 U.S. 496 (1939)…………………………..15

*Lovell v. Griffin*, 303 U.S. 444 (1938)……………………………………………15

*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)………………………..16

*Reno v. ACLU*, 521 U.S. 844 (1997)……………………………………………..17

*Elrod v. Burns*, 427 U.S. 347 (1976)……………………………………………..17

*Doran v. Salem Inn, Inc.,* 422 U.S. 922 (1975)…………………………………..18

**United States Constitution**

U.S. Const. amend. I…………………………………………………………17

U.S. Const. amend. XIV…………………………………………………….6

U.S. Const. amend. V………………………………………………………6

U.S. Const. Article IV, Cl. 2……………………………………………….20

**Procedural History of the Case**

May 11, 2020, Movants filed a Complaint in Civil Action Seeking

Declaratory Judgment and Injunctive Relief. On May 12, 2020, Movants filed a

Motion for a Temporary Restraining Order and the within Brief in Support of

Motion for a Temporary Restraining Order.

**Statement of Facts**

On March 6 2020, the Governor issued a Proclamation declaring a disaster

emergency throughout the Commonwealth of Pennsylvania.[1] On March 19, 2020,

the Governor issued an Executive Order barring any person or entity from

operating a place of business in Pennsylvania that is not "life-sustaining," ordering

that life-sustaining businesses may remain open, but must follow, at a minimum,

the social distancing practices and other mitigation measures defined by the

Centers for Disease Control (CDC) (the "Business Closure Order").

The Business Closure Order contained a list classifying all industries as

either life-sustaining or non-life-sustaining (the "List"). Plaintiffs are businesses or

entities included on the List as non-life-sustaining and thus were compelled to

---

[1] https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf

close their physical operations. The closing of Movants' physical business locations and operations has caused substantial financial hardship on them.

The Business Closure Order stated that its violation could result in citations, fines, or license suspensions, forfeiture of the ability to receive any disaster relief; prosecutions by the Department of Health, including quarantine, isolation, or other disease control measures with violators subject to fines or imprisonment and any other criminal charges that might be applicable. Movant Missino has been threatened by the state licensing board and local police with losing her barber's license and occupancy permit respectively if she reopens in defiance of the Orders.

After issuing the Business Closure Order, the Governor added a "waiver" process thru which businesses and entities could submit an application to the Pennsylvania Department of Community and Economic Development (DCED) and request that they be permitted to operate. DCED received 42,380 waiver requests. So far, DCED approved 7,837 requests for a waiver, rejected 18,746, found 14,471 did not require one for the activity they wanted to perform. According to DCED, the remainder are still being processed.[2] On Wednesday, April 1, 2020, DCED announced that it was ending the waiver process for new requests on April 3, 2020

---

[2] https://www.pennlive.com/news/2020/04/gov-tom-wolf-vetoes-bill-that-could-allow-more-pa-businesses-to-reopen.html

2

at 5:00PM.[3] DCED employees reviewed the waiver applications and granted or denied them. Movants Cassel and Williams, both real estate agents, applied for a waiver through their statewide association, the Pennsylvania Association of Realtors, and were denied. The Governor provided no administrative review of the denial of a waiver application.

On March 13, 2020, the Governor issued an order closing all schools in the Commonwealth including private and parochial schools for a period of time and then extended that Order through the remained of the 2019/2020 academic school year (hereinafter the "School Closure Order).[4]

On April 1, 2020, the Governor ordered all individuals in Pennsylvania to stay-at-home (the "Stay-At-Home Order"), except as needed to access, support, or provide life-sustaining business, emergency, or government services.[5]  On that same day, Secretary Levine issued a similar order.[6] (The Business Closure Order,

---

[3] https://www.pennlive.com/coronavirus/2020/04/pa-businesses-seeking-waiver-to-stay-open-through-coronavirus-closures-have-until-friday-to-apply.html

[4] https://www.governor.pa.gov/newsroom/governor-wolf-announces-closure-of-pennsylvania-schools/

[5] https://www.governor.pa.gov/wp-content/uploads/2020/04/20200401-GOV-Statewide-Stay-at-Home-Order.pdf

[6] https://www.governor.pa.gov/newsroom/gov-wolf-sec-of-health-pennsylvania-on-statewide-stay-at-home-order-beginning-at-8-pm-tonight-most-prudent-option-to-stop-the-spread/

the School Closure Order and the two Stay-At-Home Orders are referred to collectively as the "Orders)."

The Stay-At-Home Order prohibits gatherings outside the home, except as may be required to access, support, or provide life-sustaining services as outlined above.[7] Enforcement of the Stay-At-Home Order commenced immediately for all counties covered under the Governor's previous Order directing "Individuals to Stay at Home," first issued March 23, 2020, as amended, and commenced at 8:00 PM Wednesday, April 1, 2020, for all counties. All Movants are subject to the Stay-At-Home Orders.

On May 1, 2020, the Governor announced the "reopening" of twenty-four counties in the northwest and northcentral regions of the state, moving them from the "Red Zone," meaning non-life sustaining businesses remain closed, to the "Yellow Zone," meaning some restrictions on work and social interaction will cease, which began on 12:01 AM, Friday, May 8, 2020 (hereinafter the "Announcement").[8] The Announcement references the Governor's full plan to reopen Pennsylvania (hereinafter the "Plan").[9]

---

[8] https://www.governor.pa.gov/newsroom/gov-wolf-announces-reopening-of-24-counties-beginning-may-8/

[9] https://www.governor.pa.gov/process-to-reopen-pennsylvania/

Under the "Red Zone," all non-life-sustaining businesses remain closed and "large gatherings" of groups is prohibited.[10] Neither the Announcement nor the Plan reopens the Plaintiffs; they are all still deemed to be non-life-sustaining and are located in the Red Zone. Neither the Announcement nor the Plan provides a date when said Plaintiffs, or any business or entity on the non-life-sustaining List and located in Pennsylvania's remaining red counties will be permitted to reopen.

On May 7, 2020, the Governor extended the Stay-At-Home Order for counties in the Red Zone to June 4, 2020.[11] On May 8, 2020, the Governor announced thirteen additional counties will move to the Yellow Zone at 12:01 AM on Friday, May 15. Those counties include Allegheny, Armstrong, Bedford, Blair, Butler, Cambria, Fayette, Fulton, Greene, Indiana, Somerset, Washington and Westmoreland.[12] None of the Plaintiffs' businesses are located in those counties identified *supra*. In his May 8, 2020 announcement, the Governor: (a) threatened to "re-impose restrictions if danger arises."[13]

---

[10] The Plan does not define "large gatherings." However, the "Yellow Zone," which is a loosening of prohibitions in the Red Zone, prohibits, "Large Gatherings of More Than 25." So we can conclude that the large gatherings must mean gatherings of fewer than 25 people.

[11] https://www.governor.pa.gov/newsroom/gov-wolf-sec-of-health-take-actions-on-stay-at-home-orders-issue-yellow-phase-orders/

[12] https://www.governor.pa.gov/newsroom/gov-wolf-announces-13-counties-will-move-to-yellow-phase-of-reopening-on-may-15/

[13] https://www.governor.pa.gov/newsroom/gov-wolf-announces-13-counties-will-move-to-yellow-phase-of-reopening-on-may-15/

## Statement of Questions Involved

**(1).**  **Whether Movants have shown a reasonable probability of success on the merits?**

**(2).**  **Whether Movants will be irreparably injured by denial of the relief?**

**(3).**  **Whether granting preliminary relief will result in even greater harm to the nonmoving party?**

**(4).**  **Whether granting the preliminary relief will be in the public interest?**

## Argument

In considering a request for a Temporary Restraining Order, this Court follows the four-prong test enunciated by the United States Court of Appeals for the Third Circuit, which is the same test used to determine requests for Preliminary Injunctions, and which is laid out in the Statement of Questions above and answered below. *Miller v. Skumanick*, 605 F. Supp. 2d 634 (M.D. Pa. 2009).

### (1).  Movants have shown a reasonable probability of success on the merits.

Movants have been deprived of their right to liberty and property without due process of law as guaranteed by the U.S. Const. amend. V, XIV. Movants were denied the right to notice, a hearing and judicial review, among many other forms of due process, prior to and after the issuance of the Orders and its deprivation of their property interests in their businesses and entities. In in *Fuentes v. Shevin*, 407 U.S. 67 (1972), the United States Supreme Court found that "the statutes'

prejudgment replevin provisions deprived petitioners of their property without due process insofar as they denied the right to prior notice and hearing before property was taken." *Id*. at 69. In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), the United States Supreme Court found that federal law establishes minimum due process procedural requirements below which states cannot go and held, "…some form of hearing is required before the owner is finally deprived of a protected property interest." *Id*. at 424. No hearing was provided in the case at bar.

In *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264 (1981), the High Court upheld a summary cease surface mining order. However, the mine operator received much more due process than Movants did in the case at bar, including the right to notice and an abatement period if the state inspector found that its activity, "creates an immediate danger to the health or safety of the public, or is causing, or can reasonably be expected to cause significant, imminent environmental harm to land, air, or water resources." *Id*. 298. Movants received no abatement period; there were not given any period of time to implement COVID-19 precautions, let alone be afforded an abatement period should they fail to do so, before they were summarily shut down. The owners also received the right to request temporary relief from enforcement, to which the state was required to respond within five days, and the right to judicial review of the state's denial of temporary relief. Concerning immediate cessation orders, the owners received, "a

prompt and adequate post-deprivation administrative hearing and an opportunity for judicial review." *Id*. 268. Movants received none of these protections. Furthermore, the summary action in *Hodel* was based upon a finding of an environmental hazard at the mine. Respondents have found no environmental or public health hazards at the place of Movants' physical operations.

An important right recognized by the High Court in *Hodel* was judicial review. Even the Pennsylvania Supreme Court, in its Concurring and Dissenting Opinion in the similar case, Friends of Danny DeVito et al. v. Governor Wolf, et al, expressed doubt that judicial review could be denied to those businesses that were denied a waiver:

> I am less confident, however, in the majority's conclusion that "summary administrative action" by the executive branch to close many businesses throughout the Commonwealth must evade judicial review as a check against arbitrariness. Majority Opinion, *slip op.* at 42.

*Concurring and Dissenting Opinion*, Page 2. (See Exhibit A on Motion for Temporary Restraining Order).

Furthermore, and importantly, Respondents claim the waiver process, which is not judicial review, is all the process that is due Pennsylvania businesses and entities subject to the Business Closure Order. But, Respondents provided no waiver process, and thus no due process of any form, to the Movants and millions of Pennsylvanians subject to their Stay-At-Home Order.

Federal Courts will declare unconstitutional state executive orders that deprive individuals of their U.S. Constitutional rights, including the right to the use and control of their property and judicial review, even during war or martial law. The United States Supreme Court has declared, "The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times, and under all circumstances." *Ex parte Milligan*, 71 U.S. (4 Wall.) 2, 107, 18 L.Ed. 281, 291 (1866). In other words, the U.S. Constitution is not suspended during a pandemic. Nor is it suspended during martial law.

In *Sterling v. Constantin*, 287 U.S. 378 (1932), the Governor of Texas declared martial law in order to suppress some tumultuous Texas oilers whom he claimed were not adhering to the state's oil conservation law and thus were harming the public interest. The Governor issued executive orders and shut down the oil wells. The oilers sued in the Federal District Court to restrain the enforcement of these orders upon the ground that they were unauthorized, arbitrary and capricious, and violated the federal right to the enjoyment of private property. The Federal District Court examined the facts and determined the Governor's actions were not necessary or justified, deprived the oilers of their property rights and entered the injunction. The United States Supreme Court affirmed. The facts are similar to those in the case at bar. Movants ask this Court to find this

9

Governor's actions in shutting down their physical operations were likewise not

necessary or justified, are depriving them of their property rights and thus should

be enjoined.

In reaching its conclusion, the High Court also declared the authority of

federal courts over state officials in matters involving the U.S. Constitution:

> Where state officials, purporting to act under state authority, ***invade*** rights secured by the federal Constitution, they are subject to the process of the federal courts ***in order that the persons injured may have appropriate relief***. The Governor of the State, in this respect, is in no different position from that of other state officials. ***Nor*** does the fact that it may appear that the state officer in such a case, while acting under color of state law, has exceeded the authority conferred by the State, ***deprive the court of jurisdiction.***

*Id.* 386 (emphasis added).

And further, the High Court explained about the facts in that case:

> They leave no room for doubt that there was no military necessity which, from any point of view, could be taken to justify the action of the Governor in attempting to limit complainants' oil production, otherwise lawful. Complainants had a constitutional right to resort to the federal court to have the validity of the Commission's orders judicially determined.

*Id*. 403-04

Thus, federal courts will examine the Governor's purported reasons in issuing

executive orders and will make its own factual determinations and then determine

whether the Governor's actions are justified by the facts.

The High Court uses the *Lawton* test for state police power actions:

> To justify the State in thus interposing its authority in behalf of the public, it

must appear, -- first, that the interests of the public . . . require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.

*Lawton v. Steele*, 152 U.S. 133, 137 (1894). In *Lawton*, the High Court approved of a summary seizure of fishing nets because they were contraband and of "trifling" value. Movants' businesses are not contraband and of much more than trifling value. In any event, these Orders fail the *Lawton* test. The first prong is whether the public requires the state action (i.e. the Order). Actual evidence, not the projections used to form the basis of the Orders, reveals these Orders do more harm than good. See the recitation of findings from Professor Johan Giesecke.[14] See also the findings of Professor Michael Levitt, winner of the 2013 Nobel Prize for Chemistry, who has opined that the indiscriminate lockdown measures are "a huge mistake."[15]

The actual evidence also reveals the second *Lawton* factor – that the means are reasonably necessary for the accomplishment of the purpose – is not met. The closure of the Movants' physical operations and the prohibition on them leaving their homes with only few exceptions is not reasonable considering the actual

---

[14] https://www.aier.org/article/lockdown-free-sweden-had-it-right-says-world-health-organization-interview-with-prof-johan-giesecke/

[15] https://unherd.com/thepost/nobel-prize-winning-scientist-the-covid-19-epidemic-was-never-exponential/

evidence shows these lockdowns have been a failure. Also, a reasonable means would have been for the Respondents to have required businesses and entities to employ COVID-19 precautions like they have done in the government offices, and to the tens of thousands if not hundreds of thousands of businesses and entities they deemed to be life-sustaining or to whom they have granted waivers and thus permitted to remain open.

The third factor – that the means are not unduly oppressive upon individuals – is glaringly not satisfied considering the significant financial harm these Orders have caused to the Movants and the devastation they have caused the economy. The data showing the economic devastation wrought by these Orders is overwhelming and set forth in detail in the Complaint. Even the Governor has admitted to the economic devastation. Responding to reports of critics of his Orders the Governor said, "I think that we ought to stay the course right now. It is hard, it is devastating the economy, no question about it…"[16] This Court can take judicial notice of the severe economic harm these Orders are causing Movants and all Pennsylvanians.

Respondents will argue the deprivation and burden being suffered by Movants is only temporary. However, Pennsylvania Chief Justice Thomas Saylor

---

[16] https://www.post-gazette.com/news/state/2020/04/17/pennsylvania-governor-Wolf-reopen-economy-stay-home-order-coronavirus/stories/202004170076

wrote, in his *Concurring and Dissenting Opinion* in Friends of Danny DeVito et. al

v. Governor Wolf, et al, in a similar case brought by the undersigned counsel:

> While the majority repeatedly stresses that such closure is temporary,
> see id., this may in fact not be so for businesses that are unable to
> endure the associated revenue losses. Additionally, the damage to
> surviving businesses may be vast. Significantly, moreover, the
> Supreme Court of the United States has admonished that the
> ***impermanent nature of a restriction "should not be given exclusive***
> ***significance one way or the other" in determining whether it is a***
> ***proper exercise of police power.*** Tahoe-Sierra Pres. Council, Inc. v.
> Tahoe Reg'l Planning Agency, 535 U.S. 302, 337, 122 S. Ct. 1465,
> 1486 (2002).

*Concurring and Dissenting Opinion,* Page 2. (emphasis added).

Lastly, the United States Supreme Court stated, "The legislature may not,

under the guise of protecting the public interests, ***arbitrarily interfere*** with private

business, or ***impose unusual and unnecessary restrictions*** upon lawful

occupations." *Id*. *Lawton,* 135 (emphasis added). Respondents arbitrarily did much

more than interfere with Movants' businesses, Respondents shut them down

indefinitely with three hours-notice even though Respondents found no outbreak of

COVID-19 at Movants' businesses and made no determination that Movants were

not employing COVID-19 precautions there. These Orders are ***unusual***; there is no

model for this in the history of Pennsylvania. And they are unnecessary because

less restrictive means could have been employed such as requiring businesses to

employ COVID-19 precautions rather than shutting them down, just like the

Governor did for the tens of thousands of businesses he chose to permit to remain open.

In addition to failing the *Lawton* police power test, the Business Closure Order, List and Waiver process are arbitrary and capricious and thus should be enjoined and then declared to be unconstitutional pursuant to *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29 (1983) and *Sterling v. Constantin*, 287 U.S. 378 (1932).

Due to the mass uprising against these Orders by county commissioners, sheriffs and district attorneys, many of whom have labeled the Orders, List and the Waiver process to be arbitrary and capricious this Court can take judicial notice of same. On May 10, 2020, the Lancaster County District Attorney announced:

> We find that the Governor's continuously changing orders - and business waivers – have presented circumstances where criminal enforcement of the orders is difficult…***Constant and seemingly arbitrary changes in the scope and application of the Governor's orders makes enforcement prohibitively difficult if not impossible***.[17]

The arbitrariness of the List and Waiver process was of serious concern to the three justices of the Pennsylvania Supreme Court who signed onto the *Concurring and*

---

[17] https://lancaster.crimewatchpa.com/da/11617/post/no-prosecution-citations-issued-lancaster-county-pursuant-stay-home-orders-and-business?fbclid=IwAR2NzD6ubaF6W3kY_XRs8CT82b2ViBAA_0EUuUIeSDwbNHoEuefyRCDFjko

*Dissenting Opinion* in the case Friends of Danny DeVito et al v. Governor Wolf et al.

Also, regarding the First Amendment, the Business Order, in tandem with the Stay-At-Home Order, prohibit all Pennsylvania businesses and entities on the non-life-sustaining List from exercising their speech and assembly rights at all other non-life-sustaining businesses and entities in addition to their own; and, due to the Stay-At-Home Order, anywhere in any county in a Red or Yellow Zone as described in that Order. Further, the Governor's Plan to Reopen Pennsylvania moved twenty-four counties, on May 8, 2020, from the Red to the Yellow Zone. In the Red Zone, "Large Gatherings are Prohibited."[18] In the Yellow Zone, assemblies will be limited to no more than twenty-five persons. Thus, the rights to speech and assembly will continue to be either completely prohibited or severely restricted in certain physical locations, which include massive swaths of the geography of Pennsylvania and as such violates the U.S. Const. amend. I pursuant to *Citizens United v. FEC*, 558 U.S. 310 (2010); *Hague v. Comm. for Indus. Org.*, 307 U.S. 496 (1939); *Lovell v. Griffin*, 303 U.S. 444 (1938). In *Lovell*, the United States Supreme Court reviewed an ordinance that prohibited the distribution of literature

---

[18] The Plan does not define "large gatherings." However, the "yellow zone," which is a loosening of prohibitions in the red zone, prohibits, "Large Gatherings of More Than 25." So we can conclude that the large gatherings must mean gatherings of fewer than 25 people. See https://www.governor.pa.gov/plan-for-pennsylvania/

of any kind at any time, at any place, and in any manner without a permit from the
city manager:

> The Court held that the ordinance was invalid on its face. Freedom of speech
> and freedom of the press, which were protected by the First
> Amendment from infringement by Congress, were among the fundamental
> personal rights and liberties which were protected by the Fourteenth
> Amendment from invasion by state action.

*Id*. 447

In the case at bar, distributing religious or political pamphlets, canvassing the

voters, knocking on doors, speech and assembly are all prohibited in the Red and

Yellow Zone in the ways described above; further such First Amendment activity

that does not involve "large groups," however the Governor defines that, are

similarly prohibited by the Stay-At-Home Order because they are not deemed to be

"life-sustaining services.".

The government can impose restrictions on the time, place, and manner of

peaceful assembly, but they must be, "narrowly tailored to serve a significant

governmental interest, and . . . leave open ample alternative channels for

communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781,

791 (1989) (internal citations omitted). Eliminating the rights of Movants and all

non-life-sustaining businesses and entities from speech and assembly, or restricting

it to non-large groups is not narrowly tailored. For example, pursuant to the Stay-

At-Home Order assemblies in the Red Zone are limited to fewer than 25 people

and assemblies in the Yellow Zone are limited to no more than 25 people. This requires residents of these zones to travel perhaps hundreds of miles to the Green Zone to assemble in "large groups." However, there are no Green Zones. The restriction on assembly of "large groups" in the Red Zone is vague and the restriction of large group assemblies in the Red and Yellow Zones is overbroad and thus both have a chilling effect on speech and assembly. See *Reno v. ACLU*, 521 U.S. 844, 849 (1997).

### (2).   Movants will be irreparably injured by denial of the relief.

The loss of freedoms guaranteed by U.S. Const. amend. I, for even minimal periods of time, constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 349, (1976). This Court, in *Miller v. Skumanick*, 605 F. Supp. 2d 634 (M.D. Pa. 2009), held that the loss First Amendment freedoms *per se* constitutes irreparable harm:

> The United States Supreme Court and the Third Circuit Court of Appeals have held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Swartzwelder v. McNeilly, 297 F.3d 228, 241 (3d Cir. 2002) (quoting Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)).

*Id*. 646

Movant Williams and his two school-age children have also lost their First Amendment right to the free exercise of religion by the Governor's School Closure Order that closed their parochial schools for in-person, in-class attendance and instruction. U.S. District Judge Gregory F. Van Tatenhove, for the Eastern District

of Kentucky, on May 8, 2020, issued a temporary restraining order enjoining Gov. Andy Beshear from enforcing his ban on mass gatherings at "any in-person religious service which adheres to applicable social distancing and hygiene guidelines."[19] Respondent Governor's School Closure Order bans in-person religious instruction, mass and other religious-based services that Movant Williams' parochial school and parochial schools across Pennsylvania offered on a regular basis until the Governor's School Closure Order. (School-age children have experienced almost zero serious harm or death from COVID-19.[20])

Also, the United States Supreme Court has held that substantial business losses also constitute irreparable injury. See, e.g., *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931-32 (1975) (Defendants were entitled to preliminary relief because "a substantial loss of business and perhaps even bankruptcy" would result from waiting until they obtained a final judgment). Movants, and according to massive amounts of public data, show Pennsylvania businesses suffering substantial financial harm as a result of these Order. Also, see the Exhibits attached to Complaint filed to the above-captioned matter, which detail the substantial financial harm that has already been and continues to be caused by these Orders.

> **(3).   Granting preliminary relief will not result in even greater harm to the nonmoving party.**

---

[19] https://time.com/5834708/court-kentucky-ban-mass-gatherings-churches-coronavirus/

[20] https://www.media.pa.gov/Pages/Health-Details.aspx?newsid=803

(See detailed discussion in Motion for Temporary Restraining Order).

**(4).    Granting the preliminary relief will be in the public interest.**

The overwhelming majority of Pennsylvanians do not benefit from these Orders. The Business Closure Order is greatly harming their businesses and income. The Stay-At-Home Order is harming their immune systems by weakening it and making them more susceptible to contract viral illnesses like COVID-19. Both Orders constitute significant deprivations of their liberties and freedoms.

Also, The Governor has also threatened the people living in those counties in which the county commissioners have declared they will no longer comply with his Orders with the loss of critical CARES federal funding. And the Governor has threatened businesses owners with the loss of their professional and occupational licenses if they open in defiance of his Orders.[21] This sudden about face by the Governor has sent chills down the spines of Movants and likely tens of thousands of business owners across Pennsylvania. Thus this Court should enjoin these Orders. That would result in the immediate relief and gratitude of the millions of Pennsylvanians who are living under them and fear they may be prosecuted for violating them or that their counties will lose critical funding because of their county officials' defiance of them.

---

[21] https://www.governor.pa.gov/newsroom/gov-wolf-may-11-remarks-on-staying-the-course-following-the-law/

Pennsylvanians have an interest in not having to live under the threat of criminal prosecution for violating Orders that obviously violate their long-held Constitutional rights. Although to date the Governor has barely enforced these Orders, he has now thrown down the gauntlet. In response to the recent mass civil disobedience of the Governor's Orders by county officials across Pennsylvania.

With the Governor issuing and enforcing Orders that violate our constitutional rights, with the Governor assuming the powers of the General Assembly by writing new laws pertaining to business closures and stay-at home orders, through the Governor adjudicating claims brought by businesses he shut down and wish to be permitted to open back up, through his suspension of the landlord and foreclosure laws, through his open political warfare with county officials throughout Pennsylvania, and by these county official condemning the Orders as unconstitutional, arbitrary and unenforceable, we are experience a break down in the Rule of Law like Pennsylvania has never experienced before. Thus the Movants are not receiving the Republican form of government the U.S. Constitution guarantees them.

The United States Constitution obligates, "The United States to guarantee to every State in this Union a Republican Form of Government." U.S. Const. Article IV, Cl. 2. The Federal Judiciary is a branch of the government of the United States of America. As such this Court is required to ensure the people of Pennsylvania's

right to a Republican form of government is guaranteed. The hallmarks of a

Republican form of government include the Rule of Law, the separation of powers

and the guarantee of the fundamental rights, privileges and immunities of the

people. In order to be a Republican form of government, Pennsylvania's

government must obey its own constitution and statutes, or change those laws by

legally valid means. None of this has occurred. This Court can stop this political

revolution, stop this abuse of the Rule of Law and restore Pennsylvania to a

Republican form of government by issuing the injunction. The United States

Supreme Court has declared about a certain Texas Governor:

> If his use of the power destroy a republican government, the United States has power to restore it. Moyer v. Peabody, 212 U.S. 78; In re Boyle, 6 Idaho 609; Wadsworth v. Shortall, 206 Pa. St. 165; Mayes v. Brown, 71 W. Va. 519.

*Id. Sterling* 386

Lastly, the public – the people of Pennsylvania – have a deeply rooted,

ancient interest in liberty and property that is guaranteed by the U.S. Constitution.

By enjoining these Orders, this Court would not only permit Plaintiffs the right to

resume the operation and control of their property and get back to work providing

the goods and services their customers need, re-employing their workers and

generating the revenues they need to survive. But, even more, by enjoining these

Orders, this Court would restore to the people of Pennsylvania their fundamental,

Constitutional right to come and go from their homes as they choose, their right to

operate their businesses, their right to work, their right to a thorough and efficient

public education, their right not to be subject to arbitrary and capricious

government actions and to unequal protection of law, their right to free speech, free

assembly and the free exercise of religion and their right to a Republican form of

government and the Rule of Law.


                            Respectfully submitted,

                            */s/ Marc A. Scaringi*
                            Marc A. Scaringi, Esquire
                            PA Supreme Court ID No. 88346
                            Brian C. Caffrey
                            PA Supreme Court ID No. 42667
                            Attorneys for Plaintiffs
                            Scaringi Law
                            2000 Linglestown Road, Suite 106
                            Harrisburg, PA 17110
                            marc@scaringilaw.com
                            brian@scaringilaw.com
                            717-657-7770 (o)
                            717-657-7797 (f)

Date:__May 12, 2020

## **<u>Certificate of Word Count</u>**

The undersigned counsel certifies the word count for the foregoing Brief is 4,627

*/s/ Marc A. Scaringi*
Marc A. Scaringi, Esquire
PA Supreme Court ID No. 88346

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| William Benner, Vote Bill Benner | : |
| Committee, Nichole Missino, and | : No:  1:20-CV-00775-JEJ |
| d/b/a Giovanni's Media Barber, | : |
| Kraig Nace, Detailed Attention, Inc., | : |
| John Williams, Stephen Cassel, | : |
| Iacobucci Formal Wear | : |
| | : |
| Plaintiffs/Movants | : |
| | : Brief in Support of |
| v. | : Motion for a Temporary |
| | : Restraining Order |
| Thomas W. Wolf, in his official | : |
| Capacity as Governor of the | : |
| Commonwealth of Pennsylvania, | : |
| Rachel Levine, MD, in her official | : |
| capacity as Secretary, | : |
| Pennsylvania Department of Health | : |
| Dennis M. David, Secretary, | : |
| Pennsylvania Department of | : |
| Community and Economic | : |
| Development | : |
| Defendants/Respondents | : |

## <u>CERTIFICATE OF SERVICE</u>

I, Deborah A. Black, Paralegal for Scaringi Law, do hereby certify that I

served a true and correct copy of the ***Brief in Support of Motion for a Temporary***

***Restraining Order*** in the above-captioned action, upon the following via electronic

mail to:

J. Bart DeLone
Chief Deputy Attorney General
Pennsylvania Office of Attorney General
Appellate Litigation Section

15th Floor, Strawberry Square
Harrisburg, PA  17120
jdelone@attorneygeneral.gov


Keli Marie Neary, Esquire
Executive Deputy Attorney General
PA Attorney Civil Law Division
Pennsylvania Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA  17120
kneary@attorneygeneral.gov


Karen Masico Romano, Esquire
Chief Deputy Attorney General
Pennsylvania Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA  17120
kromano@attorneygeneral.gov


Gregory George Schwab, Esquire
Pennsylvania Office of General Counsel
Governor's Office of General Counsel
333 Market St 17th Fl.
Harrisburg, PA 17126-0333
grschwab@pal.gov


Date:  May 12, 2020                    /s/ *Deborah A. Black*_____
                                       Deborah A. Black, Paralegal
                                       For Marc A. Scaringi, Esquire and
                                       Brian C. Caffrey, Esquire